**Donald MINNIECHESKE, Plaintiff,**

v.

**Curtis M. KIRKHUFF, Legal Advisor WTA, et al., Defendants.**

**No. 74-C-418.**

United States District Court,
E. D. Wisconsin.

April 10, 1975.

Donald Minniecheske, pro se.

Bronson C. LaFollette, Wis. Atty. Gen. by William L. Gansner, Johnson, Bieber & Kirkhuff, Curtis M. Kirkhuff, Madison, Wis., for defendants.

### DECISION and ORDER

MYRON L. GORDON, District Judge.

This is a pro se "complaint for deprivation of common law rights and constitutional rights, and for failure to protect from conspiracy to deprive common law rights, constitutional rights and for treason." Jurisdiction is purported to exist pursuant to "28 U.S.C. 1343(1), (2), (3), and (4), under the Northwest Territory Ordinance of 1787, under 18 U.S.C. 2381, under 42 U.S.C. 1983, 1985 and 1986, and under 18 U.S.C. 2384."

The plaintiff describes himself as a "resort owner/operator, Fairbanks Township, Shawano Co." The list of the 18 named defendants includes the current governor and a former attorney general of Wisconsin; the president, vice-president, legal advisor, lobbyist, and directors of the Wisconsin Towns Association (WTA); the wife of the WTA vice-president; a Wisconsin department of revenue employee; and a former state assemblyman and his wife.

While jurisdiction is asserted to exist pursuant to several statutes, including 28 U.S.C. § 1343 and the civil rights acts, it is clear from a reading of the complaint that what is involved here is merely an ideological controversy involving questions of a political nature only. The plaintiff apparently fears what he

describes as "metro-regional government" and the United Nations. The controversy arises out of a 1973 dispute regarding the use of federal and state revenue sharing funds by Fairbanks township.

The defendant Kenyon C. Kies, who is a Wisconsin department of revenue employee, allegedly gave "falsely implied information" regarding the revenue sharing controversy to Fairbands officers and "threatened" them with a department of revenue investigation. By stating his support for the United Nations, Governor Lucey is alleged to have violated his oath of office, thereby committing perjury and treason, and to have conspired to deprive the plaintiff of his right to a republican form of government. Because he failed to prosecute the governor for treason and perjury, former attorney general Robert W. Warren is also alleged to have been a party to a conspiracy to deprive the plaintiff of his rights.

The defendant Herbert Grover was a state assemblyman at the time of the 1973 revenue sharing dispute. Because he requested the defendant Kies to supply him with information regarding Fairbanks township's use of federal and state revenue sharing monies and the potential and actual effect of that use on the township's future entitlement to state funds, he is alleged to have "conspire[d] to disrupt Fairbanks Town Business unnecessarily!" The plaintiff also alleges that these actions were an abuse of an assemblyman's powers and that Mrs. Grover is liable because "by indifferance [sic] or whatever, [she] apparently approves acts of her spouse."

The involvement of the balance of the named defendants in the alleged conspiracy turns upon their relationship with the Wisconsin Towns Association (WTA), whose "legal advisor", the defendant Kirkhuff, "in a letter to Fairbanks Town Clerk, Gerald E. Murphy, dated April 10, 1973," allegedly "attempt[ed] to mislead the Fairbanks Town Board with outright lies concerning Plaintiff's rights to vote on the issue (Federal Revenue Sharing) at a Special Town Meeting called in accord with Wis. Stat. 60.12," and "did further present a veiled threat suggesting there are personal penalties which can be levied against the town treasurer."

The defendant Edwin K. Krueger, who is the vice-president of the WTA, is also charged with promoting "metro-regional government" to the extent that he allegedly attempted to coerce or mislead Fairbanks Officers and other member town officials." Mrs. Krueger is named as a defendant because she "apparently condones, by ignorance or whatever, the acts of her spouse." The remaining named defendants—the WTA's president, directors, and lobbyist—are named as defendants because each one "is most certainly aware of the aforementioned Defendants' conspiracy to deprive Plaintiff of his Constitutional Rights and is therefore considered a part and party to said conspiracy, citing his failure to protect plaintiff."

In my opinion, this action should be dismissed for at least two reasons. First, the plaintiff has failed to "demonstrate that [he] is entitled to invoke the judicial process." Linda R. S. v. Richard D., 410 U.S. 614, 616, 93 S.Ct. 1146, 1148, 35 L.Ed.2d 536 (1973). With respect to the question of standing, the plaintiff has not satisfied any of the standards set forth in such cases as Association of Data Processing Service Organizations v. Camp, 397 U.S. 150, 90 S. Ct. 827, 25 L.Ed.2d 184 (1970); Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972); Jenkins v. McKeithen, 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969); and Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L. Ed.2d 947 (1968).

Second, the complaint appears to be "obviously without merit." Levering & Garrigues Co. v. Morrin, 289 U.S. 103, 53 S.Ct. 549, 77 L.Ed. 1062 (1933). The absence of state action allegations; the plaintiff's wholesale utilization of guilt-by-association joinder techniques (e. g.,

the naming as defendants of the spouses, WTA president, directors, and lobbyist); the absence of factual allegations which, if proved, would demonstrate the denial of a federal statutory or constitutional right; the absence of diversity allegations; the apparent applicability of immunity defenses, both executive and legislative; and the clearly political nature of the question involved are but a few of the factors which persuade me that dismissal is required.

Therefore, it is ordered that the defendants' motions to dismiss this action be and hereby are granted.

It is also ordered that this action be and hereby is dismissed.